Janet A. Constantino, administratrix,[1] *vs.* Pamela A.
Frechette & others.[2]

No. 07-P-371.

Norfolk. January 11, 2008. - December 18, 2008.

Present: Rapoza, C.J., McHugh, & Meade, JJ.

*Nursing Home. Arbitration,* Parties. *Contract,* Arbitration, Parties, Third party
beneficiary. *Agency,* Liability of agent.

Discussion of the standard of review applicable to motions to compel arbitration.
[354]
In a civil action seeking damages for personal injuries and the wrongful death
of the plaintiff's decedent, the individually named defendant employees of
a nursing home could not enforce an arbitration agreement contained
within an admission and financial contract entered into by their employer,
where the employees were not parties to the contract and were not otherwise
entitled to invoke the contract's arbitration provision as intended third-
party beneficiaries. [354-357]
This court declined to adopt a rule granting agents a per se right to enforce
arbitration clauses negotiated by their principals. [358-359]

Civil action commenced in the Superior Court Department on
December 14, 2005.

A motion to dismiss and to compel arbitration, filed on
September 13, 2006, was heard by *Patrick F. Brady,* J.; a second
motion to dismiss and to compel arbitration, filed on April 6,
2007, was heard by *Thomas A. Connors,* J.

*Steven H. Schafer* for the plaintiff.

*Joseph M. Desmond* (*Lawrence F. Boyle* with him) for the
defendants.

Rapoza, C.J. The primary issue in this interlocutory appeal is
whether the individually named, nonsignatory employees of the

[1] Of the estate of Marie J. Constantino.

[2] Frances Poomiratana, Christine M. Martin, Lorraine Maloney, Karen B.
Grimes, Florence M. Breen, Mary Alice Hoyle, and Susan M. Mullens.

John Adams Nursing Home, LLC (the nursing home),[3] may enforce an arbitration agreement entered into by their employer. We hold that in the circumstances of this case, they may not, and therefore we affirm two orders of the Superior Court denying their motions to compel arbitration.

*Background.* Eleven days after her admission to the John Adams Nursing Home for a short, recuperative stay, Marie Constantino died unexpectedly. Her daughter, Janet Constantino, acting in her capacity as the administratrix of Marie Constantino's estate, commenced this action against the nursing home and its parent corporation (collectively, the corporate defendants)[4] and three nurses employed by the home, seeking damages for personal injuries and the wrongful death of her mother. Relying upon the arbitration provision contained within the admission and financial contract (the contract) executed by Marie Constantino, the defendants jointly filed a motion to dismiss the case and to compel arbitration. The administratrix opposed the motion, and a judge subsequently allowed the parties to conduct limited discovery into the circumstances under which Marie Constantino signed the contract.

After hearing, the judge rejected the administratrix's numerous challenges to the validity of the contract, finding that Marie Constantino's signature was authentic and ruling that the arbitration provision was not unconscionable. See G. L. c. 251, §§ 1 and 2(*a*). Although the judge allowed the motion to compel arbitration with respect to the corporate defendants, he denied the motion as it related to the nurses on the grounds that they were not parties to the contract.[5]

The nurses pursued an interlocutory appeal of the denial of their motion as of right. See G. L. c. 251, § 18(*a*)(1); *Miller* v.

---

[3] Also known as the John Adams Healthcare Center and the John Adams Continuing Care Center. The complaint originally named the John Adams Nursing Home, LLC, and Eldertrust of Florida, Inc. (the nursing home's parent corporation), as defendants. The case against those defendants has been dismissed with prejudice.

[4] See note 3, *supra.*

[5] Because the plaintiff failed to seek leave to appeal from any adverse ruling, she may only challenge the authenticity of the contract and its alleged unconscionability as alternative grounds for affirming the orders denying the nurses' motions to compel arbitration. We need not assess the validity of the arbitration provision vis-à-vis the corporate defendants.

*Cotter*, 448 Mass. 671, 675 (2007). The administratrix, in turn, elected to dismiss all claims against the corporate defendants with prejudice and to pursue her claims solely against the nurses. With leave, she added six additional nurses as individual defendants (five employees of the nursing home and one nonemployee).

A second, nearly identical, application for arbitration from the five newly-added nurse employees before a second judge produced the same result. Their interlocutory appeal has been consolidated with the earlier interlocutory appeal of their co-employees by this court.[6]

*Discussion.* a. *Standard of review.* A motion to compel arbitration is treated like a motion for summary judgment. See G. L. c. 251, § 2(*a*); *Miller* v. *Cotter*, 448 Mass. at 676 & n.12. Thus, our review of the interlocutory orders denying the nurses' applications for arbitration is de novo, with the facts to be construed in the light most favorable to the nonmoving party, the administratrix.[7]

b. *General principles and contract analysis.* Unlike courts, whose jurisdiction is established by statute, arbitrators derive their authority from contractual agreements. See *AT&T Technologies, Inc.* v. *Communications Wrkrs. of Am.*, 475 U.S. 643, 648 (1986). Absent advance consent to such an agreement, a party cannot be compelled to arbitrate a dispute. See *Massachusetts Hy. Dept.* v. *Perini Corp.*, 444 Mass. 366, 374 (2005). See also *School Comm. of Boston* v. *Boston Teachers Union, Local 66*, 372 Mass. 605, 613 (1977) (recognizing the "understandable attitude of wariness about arbitration forced on a party"); *Brothers Bldg. Co. of Nantucket, Inc.* v. *Yankow*, 56 Mass. App. Ct. 688, 693 (2002) (noting that the statutory arbitration procedure

[6]Hereinafter, we shall refer to the eight individual nurse employees of the nursing home as "the nurses."

[7]We agree with the nurses that both the Massachusetts Arbitration Act, St. 1960, c. 374, § 1, codified, as amended, at G. L. c. 251, and the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. (2006), which are similar in language and purpose, appear to apply in this case. See *Miller* v. *Cotter*, 448 Mass. at 676-679 (recognizing the absence of a preemption problem and applying Massachusetts law in a case involving a challenge to an arbitration agreement executed in the context of a nursing home admission). No matter turns on this point here.

is available only to the parties to an arbitration agreement). In construing arbitration agreements, courts should look to the intent of the parties as manifested in the terms of the contract. See *Rae F. Gill, P.C.* v. *DiGiovanni*, 34 Mass. App. Ct. 498, 501 (1993). Agreements should be construed "as broadly as the parties obviously intended." *Glenn Acres, Inc.* v. *Cliffwood Corp.*, 353 Mass. 150, 154 (1967).

The issue before us is whether the nurses have demonstrated either that they were parties to the contract or that they were otherwise entitled to invoke its arbitration provision. See *St. Fleur* v. *WPI Cable Sys./Mutron*, 450 Mass. 345, 353 (2008); *Computer Corp. of Am.* v. *Zarecor*, 16 Mass. App. Ct. 456, 459-460 (1983). We conclude, as did the judges below, that the nurses were not parties to the arbitration agreement. First, the contract named two and only two parties to the agreement: the "Center" (i.e., John Adams Continuing Care Center) and the "Patient" (Marie Constantino).[8] The nurses were not named as parties, nor did they assume any obligations under the terms of the contract.

Moreover, the introduction to the arbitration provision, which broadly describes its scope, cannot be read to refer to claims by the administratrix against the nurses. This is because subsequent language in the contract, which explains the mechanics of the arbitration procedure and waiver of jury trial, confines the reach of the arbitration provision to disputes between the parties to the contract, i.e., the patient and the center.[9] See *Quirk* v. *Data Terminal Sys., Inc.*, 379 Mass. 762, 767 n.2 (1980) (parties to

---

[8]The contract specified that the center included not only its trade name but also its "legal entity" (John Adams Continuing Care Center). The definition did not extend to agents, employees, and representatives of the center. The contract is completely silent on the question of the applicability of the agreement to that class of individuals.

[9]The binding arbitration provision of the contract, section H.3, provided, as herein relevant, that (1) "[a]ny claim, controversy, dispute or disagreement *initiated* by either party prior to written notice of mediation, shall be resolved by binding arbitration . . ."; (2) "[t]he parties hereby agree that *either* may initiate a claim against *the other* pursuant to AAA 'Rules for the Resolution of Consumer-Related Disputes,' . . . an arbitration based upon written documents produced by *either* or *both* parties . . ."; and (3) "[b]y agreeing to arbitration of all disputes, *both* parties are waiving a jury trial for all contract, tort, statutory, regulatory, and other claims" (emphases supplied).

arbitration agreements are free to limit the scope of their agreement, by appropriate language, in any way they deem suitable).

We also conclude that the nurses cannot otherwise invoke the arbitration agreement as nonparties because they do not qualify as intended third-party beneficiaries to the contract. A binding contract requires mutual assent to all essential provisions. See *Bernard* v. *Cameron & Colby Co.*, 397 Mass. 320, 322-323 (1986); *I & R Mechanical, Inc.* v. *Hazelton Mfg. Co.*, 62 Mass. App. Ct. 452, 454-455 (2004). Viewed from this perspective, at the time she signified her assent to the arbitration provision, Marie Constantino could not reasonably have understood that she was agreeing to waive her right to a jury trial not only against the nursing home, but also against all its employees.

If the nursing home harbored the intention to bring its employees within the purview of the arbitration provision, it had the duty to clearly inform its patients that the arbitration provision was intended to inure to the benefit of individual nurses as well. If the provision were so drafted, the nurses would be intended third-party beneficiaries of the contract and would have the right to enforce it as such. See *Miller* v. *Mooney*, 431 Mass. 57, 61-62 (2000), quoting from *Anderson* v. *Fox Hill Village Homeowners Corp.*, 424 Mass. 365, 366-367 (1997) ("It must appear from 'the language and circumstances of the contract' that the parties to the contract 'clear[ly] and definite[ly]' intended the beneficiaries to benefit from the promised performance"). See also *McCarthy* v. *Azure*, 22 F.3d 351, 362 (1st Cir. 1994) (finding the defendant-employee not covered by the arbitration agreement in part because "we are unable to discern any indication in the [contract] that the parties meant to make their respective agents or employees third-party beneficiaries"). This was not done in the contract before us, and important rights should not be waived by implication.[10]

The nurses suggest that if they are not covered by the present

[10]As evidence of a clear intent to cover the employees, the nurses point to sections A and B of the contract (preliminary statements and services provided), which appear on the first two pages. Therein, the nursing home promised to provide professional nursing services to the patient. Since a corporation may only act through its agents, the nurses maintain that they were included by necessary implication as parties to the arbitration agreement. We find this argument unpersuasive because (1) the clearest source of the parties' intent —

agreement, consumers will make broad end-runs around arbitration clauses by naming individual employees of corporations as defendants, thereby "eviscerating arbitration in general." We disagree. If the nursing home had wanted to bring its employees within the ambit of the agreement, it could easily have achieved the desired result by an alternate drafting of the contract. See *Miller* v. *Cotter*, 448 Mass. at 684-685; *McCarthy* v. *Azure*, 22 F.3d at 360.

Nor would each and every agent of the corporation be required to sign the agreement in order to be covered. A clause establishing that the agreement was intended to inure to the benefit of the employees, or other appropriate language, would suffice to create an enforceable right upon which the nurses could rely. Such language is commonly included in nursing home admissions contracts, although it was absent here. See *Briarcliff Nursing Home, Inc.* v. *Turcotte*, 894 So. 2d 661, 663-664 (Ala. 2004), and *Vicksburg Partners, L.P.* v. *Stephens*, 911 So. 2d 507, 511 (Miss. 2005), cited in *Miller* v. *Cotter*, 448 Mass. at 682.

The conclusion we reach does not conflict with the reasoning of *Miller* v. *Cotter*, *supra*, contrary to the assertion of the nurses. In the *Miller* case, the Supreme Judicial Court reversed the denial of a motion by the nursing home and three of its employees to compel arbitration. See *id.* at 681-684. However, unlike the arbitration provision at issue here, the more comprehensive arbitration agreement in *Miller*, an independent two-page document, expressly stated that the parties intended that the agreement would inure to the benefit of the agents, employees, and servants of the nursing home.[11] The holding in *Miller* is therefore not inconsistent with our decision in the present case, as the arbitration agreement here does not contain such language.

---

the language of the arbitration provision — does not support it; and (2) a nursing home patient, who by definition is infirm, should not be expected to comb through the entire contract to discern intent. The inclusion of unnamed parties in the arbitration provision through reference to provisions appearing several pages earlier in the contract does not constitute "clear intent."

[11]Although the Supreme Judicial Court quoted only limited excerpts of the arbitration agreement in its *Miller* decision, the administratrix's attorney submitted a complete copy of it in support of his opposition to the second motion to compel arbitration here. The first motion judge in the instant case did not have the benefit of the *Miller* case.

c. *Agency theory*. The nurses also argue that employees should be able to take advantage of arbitration clauses negotiated by their employers even when they do not qualify as intended third-party beneficiaries.

We recognize that there are cases in which courts have allowed employees to enforce arbitration agreements entered into by their principals simply by virtue of their agency status when they are defending against actions performed in their capacity as agents. See, e.g., *Pritzker* v. *Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 7 F.3d 1110, 1121-1122 (3d Cir. 1993). However, some courts, including the United States Court of Appeals for the First Circuit, will not apply arbitration clauses to nonsignatory agents unless an intent to benefit both the principal and its agents is overtly reflected in the contract. See Bland, Bailey, Quirk, Frankel, & Sheldon, Consumer Arbitration Agreements §§ 7.4.3 & 7.4.4 (5th ed. 2007); *McCarthy* v. *Azure*, 22 F.3d at 356, 362. Cf. *Computer Corp. of Am.* v. *Zarecor*, 16 Mass. App. Ct. at 460.

We follow the latter practice. See *id.* at 459-460. Typically, agents do not obtain rights or responsibilities from contracts entered into by their principals, absent additional contractual terms such as third-party beneficiary provisions or indemnification clauses. Merely asserting that all agents, when acting within the scope of their agency, are entitled to benefit from the arbitration clauses — and only arbitration clauses — negotiated by their principals requires an extension of the law of contracts and agency relationships, which we decline to do. We prefer to follow the First Circuit approach expressed in *McCarthy* v. *Azure*, 22 F.3d at 357, requiring language in the agreement that manifests a clear intent to benefit employees. This is far more consistent with our courts' view that arbitration agreements are contractual in nature and that the intent of the parties as manifested in the contract is therefore determinative. See *Massachusetts Hy. Dept.* v. *Perini Corp.*, 444 Mass. at 374; *Rae F. Gill, P.C.* v. *DiGiovanni*, 34 Mass. App. Ct. at 501.

Here, because we conclude that no intention to protect the nurse employees was evident in the arbitration agreement, and because we decline to adopt a rule granting agents the per se right to enforce the arbitration clauses negotiated by their

principals, the nurses are not entitled to enforce the arbitration clause against the administratrix.

Insofar as the order of November 21, 2006, denied the motion to compel arbitration as to defendants Frechette, Poomiratana, and Martin, it is affirmed. The order of September 6, 2007, denying the motion to compel arbitration as to defendants Maloney, Grimes, Breen, Hoyle, and Mullens is affirmed.

*So ordered.*