SUPERIOR COURT 
 
 MICHAEL RUSSO, Plaintiff, vs. NICHOLAS MANZOLI Defendant

 
 Docket:
 2181CV01738
 
 
 Dates:
 December 14, 2021
 
 
 Present:
 JAMES BUDREAU Justice of the Superior Court
 
 
 County:
 MIDDLESEX, ss.
 

 
 Keywords:
 MEMORANDUM OF DECISION AND ORDER ON DR. MANZOLI’S MOTION TO DISMISS
 
 

             This case presents a dispute about whether the Defendant, Nicholas Manzoli (“Dr. Manzoli”) who allegedly retired from a dental practice shared with Plaintiff, Michael Russo (“Dr. Russo”) has improperly received benefits post retirement, violated his fiduciary duties to the shareholders and failed to transfer his stock as required upon retirement. Dr. Russo is seeking damages for breach of contract, fiduciary duties as well as implied covenant of good faith and fair dealing and brings a claim for deceptive trade practices pursuant to G.L. c. 93A. While denying the conduct and recognizing that this is a Rule 12(b)(6) Motion, Dr. Manzoli moves to dismiss the c. 93A Count and to stay this remaining action on the grounds that the core of Dr. Russo’s claims are subject to mandatory arbitration. This Court will need to consider Dr. Manzoli’s Employment
 
                                                            -1-
 
Agreement attached to its Motion to Dismiss pursuant to Rule 12(c) for the limited purpose of deciding the arbitration issue.
            For the reasons which follow, the Defendant’s motion is Denied.
BACKGROUND
            The Allegations[1]
            Dr. Manzoli signed an Employment Agreement on January 1, 2005 with Central New England Endodontics (“CNEE” or “Dental Practice”) which requires them (Dr. Manzoli and CNEE) to resolve any employment dispute through arbitration. Dr. Russo and Dr. Manzoli are 50% shareholders in CNEE, which is a dental practice, and equal members of E&I Properties, LLC (which is a related property management entity. Dr. Russo is not a signatory to the Employment Agreement between CNEE and Dr. Manzoli. The Stock Agreement with CNEE was executed on January 20, 2005 while the Operating Agreement for E&I was not executed until 2007 (both agreements referred to as “stock agreements”).
            Dr. Russo complains that his partner, Dr. Manzoli, has retired from the Dental Practice as evidenced by his failure to perform procedures, show up at the
 
-------------------------------------
 
[1] The following facts, which are assumed to be true for purposes of Rule 12, are drawn from the Dr. Russo’s Complaint. Along with the Complaint, the Court considers documents upon which the allegations of the Complaint rely. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 (2004). For the limited purpose of deciding the arbitration issue only, this Court will consider the Employment Agreement attached to the Dr. Manzoli’s Motion to Dismiss as permitted by Mass.R.Civ.P. 12(c) and in the interests of justice to ensure that a futile claim does not cause the Court and parties to expend unnecessary resources.
 
                                                            -2-
 
office, produce any revenues, etc. Despite Dr. Manzoli’s retirement, Dr. Russo complains that he continues to draw a salary and accept other benefits not due a retiree. More importantly, Dr. Russo claims that Dr. Manzoli has not only failed to transfer his stock to the him as required by the CNEE Stock Agreement and E&I Operating Agreement, but has attempted to extort a higher sale price for the stock, which violates the terms of those stock agreements and his fiduciary, if not moral, duties to Dr. Russo in his shareholder capacity. He has also threatened to destroy the practice in words and by his actions.
            Dr. Manzoli points out that the triggering event for the transfer or sale of his stock in both CNEE and E&I is his retirement, which is disputed. Dr. Manzoli asserts that since the question of his retirement is in dispute, this issue must be resolved through arbitration first in accordance with the terms of his Employment Agreement. Once this employment dispute is resolved, then the parties can deduce whether a triggering event has occurred and deal with all the Dr. Russo’s allegations, if any are remaining.
            Dr. Russo responds that since he is not a signatory to Employment Agreement, he cannot be forced to arbitrate the question of whether Dr. Manzoli is retired. Dr. Russo also responds that his claims fall outside the scope of the employment issue raised by Dr. Manzoli and are controlled independently by the CNEE and E&I stock agreements.
 
                                                            -3-
 
DISCUSSION
            I. Motion to Dismiss Standard
 
            Dr. Manzoli has moved to dismiss Dr. Russo’s claims pursuant to Mass. R. Civ. P. 12(c) on the grounds that the “complaint fails to state a claim upon which relief can be granted. Welch v. Sudbury Youth Soccer Ass’n, 453 Mass. 352, 353 (2009). To survive a motion to dismiss, a complaint must contain “factual ‘allegations plausibly suggesting (not merely consistent with)’ an entitlement to relief” Iannacchino v. Ford Motor Co., 451 Mass. 623, 636 (2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 557 (2007)). “The allegations must be more than ‘mere labels and conclusions,’ and must ‘raise a right to relief above the speculative level.’” Buffalo-Water 1, LLC v. Fidelity Real Estate Co., LLC, 481 Mass. 13, 17 (2018) (quoting Galiastro v. Mortgage Elec. Registration Sys., Inc., 467 Mass. 160, 165 (2014)). The Court’s review is limited to the factual allegations of the complaint and facts contained within any attached exhibits, see Eigerman v. Putnam Invs., Inc., 450 Mass. 281, 285 n.6 (2007), as well as any matters of public record and documents relied upon in the complaint itself. See Marram v. Kobrick Offshore Fund, Ltd., 442 Mass. 43, 45 n.4 (2004); Schaer v. Brandeis Univ., 432 Mass. 474, 477 (2000). The Court must “accept as true the factual allegations in the complaint and the attached exhibits,
 
                                                            -4-
 
[and] draw all reasonable inferences in the Plaintiff’s favor Buffalo-Water 1, LLC, 481 Mass. at 17.
            The Court may expand upon the record and consider additional records pursuant to Rule 12(c) to render a judgment on the pleading. This Court does so for the limited purpose of deciding the question of whether this case should be stayed and the underlying employment dispute sent to arbitration. Such a finding will ensure that neither the Court nor the parties expend unnecessary resources litigating a futile claim and is consistent with the legislative intent of the Massachusetts Arbitration Act, G.L. c. 251, § 1 et seq.
            II. The Defendant’s Motion to Dismiss
            Dr. Manzoli makes two arguments. First, the entire proceeding should be stayed because the core of the Dr. Russo’s case revolves around whether the Dr. Manzoli was retired, which is the subject of mandatory arbitration based upon his Employment Agreement with CNEE. Second, Dr. Russo’s c. 93A claim should be dismissed because this is a private claim between employee and employer or an intra-corporate transaction. These claims will be addressed below by the Court.
 
                                                            -5-
 
            III Analysis
            a. The Arbitration Claim
            The threshold issue of whether a contract requires the parties to arbitrate a particular dispute “is ordinarily for a court to decide, and courts will not defer that issue to arbitration absent ‘clea[r] and unmistakabl[e] evidence’ that the parties agreed to do so” (brackets in original). Merrimack College v. KPMG LLP, 88 Mass. App. Ct. 803, 808, rev. denied, 473 Mass. 1112 (2016), quoting Massachusetts Highway Dept. v. Perini Corp., 83 Mass. App. Ct. 96, 100- 01, rev. denied, 465 Mass. 1107 (2013), and First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995). Courts, not arbitrators, decide whether an arbitration agreement binds parties who did not sign the contract, because in such cases there is no clear and unmistakable evidence that the nonsignatories intended to delegate questions of arbitrability to an arbitrator. Walker v. Collyer, 85 Mass. App. Ct. 311, 317-18 (2014)
            “Absent advance consent to [a contractual] agreement, a party cannot be compelled to arbitrate a dispute.”  Id at 319.  Constantino v. Frechette, 73 Mass. App. Ct. 352, 354n (2008) and citing United Steelworkers of America v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582 (1960). InterGen N.V. v. Grina, 344 F.3d 134, 137 (1st Cir. 2003). “But the obligation to arbitrate is not limited to those who have signed an arbitration agreement.” Id citing S.A. v American Arbitration Ass’n
 
                                                            -6-
 
Thomson–CSF, 64 F.3d 773, 776 92nd Cir. 1995). Exceptions to the general rule binding parties only to arbitration agreements they have signed arise out of common-law principles of agency and contract law. Id at 318–19. Nonsignatories can be compelled to arbitrate under certain circumstances. Id at 316-17; Ouadani v. TF Final Mile, LLC., 876 F.3d 31, 37 (1st Cir. 2017); Intergen N.V. at 344 F3d 145-46.
            Massachusetts law provides “six theories for binding nonsignatories to arbitration agreements: (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) equitable estoppel, and (6) third-party beneficiary.” Machado v. System4 LLC, 471 Mass. 204, 209-210 (2015) The only possible theory applicable in this case is “equitable estoppel.”
            A nonsignatory may be estopped from denying it is obligated to arbitrate where it knowingly exploits a contract with an arbitration clause either (i) by seeking to enforce, or asserting claims under, the contract's other provisions, or (ii) by seeking and obtaining direct benefits from that contract. Cavallaro v. Wilmer Cutler Pickering Hale & Dorr, LLP, 2020 WL 2193633 at 4 (Mass. Sup. Ct Feb 3, 2020) citing Griswold v. Coventry First, LLC, 762 F.3d 264, 272 (3d Cir. 2014), Noble Drilling Services, Inc. v. Certex USA, Inc., 620 F.3d 469, 473 (5th Cir. 2010) and Reid v. Doe Run Res. Corp., 701 F.3d 840, 846 (8th Cir. 2012).
 
                                                            -7-
 
            The Dr. Russo is not seeking to enforce Dr. Manzoli’s Employment Agreement in this suit. See Ouadani v. TF Final Mile LLC, 876 F.3d 31, 38 (1st Cir. 2017) (explaining that when a signatory seeks to bind a non-signatory “estoppel has been limited to cases ‘[that] involve non-signatories who, during the life of the contract, have embraced the contract despite their nonsignatory status but then, during litigation, attempt to repudiate the arbitration clause in the contract.’ ”) Dr. Russo’s suit, instead, seeks damages for (a) breach of two separate stock agreements as well as violations of Dr. Manzoli’s fiduciary responsibilities regarding the same; and (b) 93A violations relating to the same conduct. Dr. Russo has not alleged that the Employment Agreement was breached.
            Moreover, there is no evidence in the record that Dr. Russo “ever expressly availed himself of any benefit flowing from the arbitration agreement” by arguing Dr. Manzoli was retired. Walker, 85 Mass App Ct. at 321; see Machado, 471 Mass. at 215 (citing See VSR Fin. Servs., Inc. v. McLendon, 409 S.W.3d 817, 832– 833 (Tex.Ct.App.2013) for proposition that “plaintiff did not rely on terms of agreement in asserting claims where pleading only made reference to or presumed existence of agreement”). Dr. Russo simply sought, without exploiting the Employment Agreement itself, to require Dr. Manzoli to transfer his stock upon retirement as required by both the CNEE Stock Agreement and E&I Operating
 
                                                            -8-
 
Agreement. He is not seeking a direct benefit from the Employment Contract, but is seeking to enforce the stock agreements for CNEE and E&I.
            Even if the Employment Agreement somehow informed the Dr. Russo about what constitutes a retirement, this still would be insufficient to constitute a direct benefit or exploitation of that agreement.[2] Dr. Russo’s reference to such a definition, if it does exist, would still not rise to the level of receiving a direct benefit from the arbitrable Employment Agreement.
            Therefore, this Court finds that Dr. Manzoli’s Motion to Dismiss or, Alternatively, stay this case, based upon the mandatory arbitration clause contained in the Employment Agreement is Denied.
            b. G.L. c. 93A (Count IV)
            Chapter 93A, commonly known as the Massachusetts Consumer Protection Act, is a broad consumer protection statute that provides a private cause of action for a party that “has been injured,” G.L. c. 93A § 9(1), by “unfair or deceptive acts or practices in the conduct of any trade or commerce,” id. § 2(a).
            It is well established that “a practice or act [is] unfair under G.L. c. 93A, § 2, if it is (1) within the penumbra of a common law, statutory, or other established
 
-------------------------------------
 
[2] “The benefits must be direct—'flowing directly from the agreement.’ MAG Portfolio, supra. The benefits are indirect—thus not estopping the party—'where the nonsignatory exploits the contractual relation of parties to an agreement, but does not exploit (and thereby assume) the agreement itself.’” Walker, 85 Mass. App. Ct. at 320 quoting MAG Portfolio Consult, GMBH v. Merlin Biomed Grp., LLC, 268 F.3d 58, 61 (2nd Cir. 2001)
 
                                                            -9-
 
concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury to competitors or other business people.” Morrison v. Toys “R” Us, Inc., 441 Mass. 451, 457 (2004), quoting Heller Fin. v. Insurance Co. of N. Am., 410 Mass. 400, 408 (1991). “Although whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact . . . the boundaries of what may qualify for consideration as a c. 93A violation is a question of law.” Milliken & Co. v. Duro Textiles, LLC, 451 Mass. 547, 563 (2008)(ellipses in original) quoting Schwanbeck v. Federal–Mogul Corp., 31 Mass. App. Ct. 390, 414 (1991), S.C., 412 Mass. 703 (1992).
            The Defendant moves to dismiss Dr. Russo’s 93A claim on the grounds that this is an internal employment dispute between partners that is private in nature or/and an intra-enterprise transaction that does not affect the marketplace. See Governo Law Firm LLC v. Bergeron, 487 Mass. 188 (2021) See also Riseman v. Orion Research, Inc., 394 Mass. 311, 313-314 (1985) Linkage Corp. v. Trustees of Carson, 425 Mass. 1, 23 n. 33 (1997)(Chapter 93A also prohibits claims by a stockholder and a corporation as well as “disputes between parties to a joint venture and between fellow stockholders.” ); and Szall v. Locke, 421 Mass 448, 451 (1995).
            While it could be argued that some of Dr. Russo’s claims against Dr. Manzoli arise out of either their stockholder agreements or are based upon their
 
                                                            -10-
 
private relationship as partners to their closely held business, many of the allegations are akin to those in Governo Law Firm LLC v. Bergeron, supra where the defendant engaged in misfeasance that interfered with the plaintiff’s ability to compete in the marketplace. Dr. Russo’s allegations that Dr. Manzoli used a third-party investment bank in Illinois to improperly force a buyout of Dr. Russo’s stock at a price greater than permitted in the stock agreements is one example of engaging in conduct that steps in the commercial marketplace and out of the intra- corporate context. The allegation that Dr. Manzoli threatened to destroy the practice together with the allegations he was improperly leveraging a higher stock price and raiding the Dental Practice’s assets are other examples supporting a claim that Dr. Manzoli’s conduct was not only but impacted the Dental Practice’s patients and ability to compete in the marketplace. All these transactions can on their face be considered unconscionable conduct violative of c. 93.
            As this is not a motion for summary judgment, this Court need not resolve the fine parsing of facts to determine whether some of the conduct constitutes an intra-corporate dispute or a commercial transaction in the marketplace. See White Winston Select Asset Funds, LCC v. Professional Diversity Network, Inc., 35 L.Rptr. 584, 2019 WL 2605707 at *4 (May 31, 2019). The discovery process will excavate the facts for that purpose.
 
                                                            -11-
 
            For purposes of a Rule 12(b)(6) motion, however, Dr. Russo has pled sufficient facts to support a plausible claim upon which relief may be granted. Dr. Manzoli’s Motion to Dismiss Count IV is Denied.
CONCLUSION AND ORDER
            For the foregoing reasons, the Defendant’s Motion to Dismiss and/or, alternatively, stay this action is Denied.
            SO ORDERED.
 
/s/JAMES BUDREAU Justice of the Superior Court
 
December 14, 2021
 
                                                            -12-
 
xxz