NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-12813


PHILIP LANDRY[1]  vs.  TRANSWORLD SYSTEMS INC.


Worcester.      December 6, 2019. - July 28, 2020.

Present:  Gants, C.J., Lenk, Gaziano, Lowy, Budd, Cypher,
& Kafker, JJ.


Consumer Protection Act, Arbitration.  Debt.  Arbitration,
    Consumer Protection Act, Arbitrable question.  Federal
    Arbitration Act.  Agency, Independent contractor.
    Contract, Arbitration, Third party beneficiary.



Civil action commenced in the Superior Court Department on
September 21, 2018.

A motion to compel arbitration was heard by William J.
Ritter, J.

The Supreme Judicial Court on its own initiative
transferred the case from the Appeals Court.


Bryan C. Shartle, of Louisiana, for the defendant.
Sergei Lemberg for the plaintiff.
Angela Laughlin Brown, of Texas, & John C. La Liberte, for
ACA International, amicus curiae, submitted a brief.
Maura Healey, Attorney General, & Max Weinstein, Assistant
Attorney General, for the Commonwealth, amicus curiae, submitted
a brief.

---

[1] On behalf of himself and all others similarly situated.

LENK, J.  The plaintiff, Philip Landry, purportedly owes a debt to Enterprise Rent-A-Car Company of Boston, LLC (Enterprise), for damage to a rental vehicle that he has declined to pay.[2]  Enterprise assigned this debt to the defendant, Transworld Systems Inc. (Transworld), for collection.  Landry subsequently filed a class action complaint against the defendant in the Superior Court; he claimed that Transworld, by virtue of its too frequent telephone contact with him and other debtors, had engaged in improper debt collection practices in violation of the Massachusetts consumer protection act, G. L. c. 93A, § 2, and debt collection regulations, 940 Code Mass. Regs. §§ 7.00 (2012).  Although Transworld is not a party to the rental contract between Landry and Enterprise, and although Landry's G. L. c. 93A claim against Transworld is unrelated to that rental contract, Transworld nonetheless sought to compel arbitration of Landry's claims pursuant to that contract. Transworld appeals from the denial of its motion to compel.  We affirm.[3]

---

[2] Enterprise is not a party to this litigation, and whether a debt is owed to Enterprise is not an issue before this court.

[3] We acknowledge the amicus briefs submitted by the Commonwealth and ACA International (the Association of Credit and Collection Professionals).

1.  Background.  The facts are drawn from Landry's complaint and from Transworld's motion to compel arbitration. In February of 2018, Landry rented a vehicle from Enterprise, which Enterprise asserts that he returned in a damaged condition.  Enterprise repaired the vehicle and billed Landry for the repairs.  After Landry failed to make any payment, Enterprise assigned the debt to Transworld, a company that Enterprise had engaged to provide it debt collection services.[4]

In September of 2018, Landry filed a class action complaint against Transworld in the Superior Court.  The complaint asserted that Transworld had called Landry's cellular telephone eight times within a seven-day period, in violation of the limits established under the Massachusetts consumer protection act, G. L. c. 93A, § 2, and debt collection regulations, 940 Code Mass. Regs. § 7.04(1)(f).[5]  Landry seeks to represent all Massachusetts consumers who have received more than two

---

[4] Pursuant to a service agreement between Enterprise and Transworld, Enterprise assigns unpaid debts to Transworld for collection.  Transworld "process[es]" collections files referred to it in return for a "collection fee" when a claim is paid. Under the terms of the service agreement, Transworld is described as an independent contractor and is expressly prohibited from referring to itself as an agent of Enterprise. Transworld also is required to comply with all applicable Federal and State debt collection laws.

[5] The Massachusetts debt collection regulations state that "[i]t shall constitute an unfair or deceptive act or practice" to contact a debtor more than two times in a seven-day period. See 940 Code Mass. Regs. § 7.04(1)(f).

collection calls from Transworld in a seven-day period in the four years immediately prior to the filing of his complaint.

Transworld moved to compel arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 et seq. In support of its motion, Transworld cited a binding arbitration provision contained in Landry's rental contract with Enterprise. In order to rent a vehicle from Enterprise, Landry signed a form lease contract, which contains the following language:

> "25. Mandatory Arbitration Agreement: RENTER AND OWNER [(i.e., Enterprise)] EACH WAIVE THEIR RIGHT TO A JURY TRIAL OR TO PARTICIPATE IN A CLASS ACTION PURSUANT TO THE FOLLOWING TERMS. RENTER AND OWNER AGREE TO ARBITRATE ANY AND ALL CLAIMS, CONTROVERSIES OR DISPUTES OF ANY KIND ("CLAIMS") AGAINST EACH OTHER, INCLUDING BUT NOT LIMITED TO CLAIMS ARISING OUT OF OR RELATING TO THIS AGREEMENT, OR OWNERS'S . . . CHARGES . . . . This Arbitration Agreement is to be broadly interpreted and applies to all claims based in contract, tort, statute, or any other legal theory; all claims that arose prior to or after termination of the Rental Agreement; all claims Renter may bring against Owner's employees, agents, affiliates or representatives; and all claims that Owner may bring against Renter. . . .
>
> "(1) Procedure. A party must send a written Notice of Dispute . . . to the other party. . . . If Owner and Renter do not resolve the claim . . . a party may [demand arbitration] . . . .
>
> ". . .
>
> "(4) Governing Law and Enforcement: The [Federal Arbitration Act] applies to this Arbitration Agreement and governs whether a claim is subject to arbitration."

The Superior Court judge denied Transworld's motion to compel arbitration. He reasoned that Transworld, as a nonsignatory,

was required to present "clear and unmistakable" evidence that Landry had agreed to arbitrate his claims against Transworld, and that Transworld had failed to do so.  Transworld sought an interlocutory appeal in the Appeals Court, as was its right pursuant to G. L. c. 251, § 18, of the denial of its motion to compel arbitration.  We transferred the case to this court on our own motion.

2.  Discussion.  We review the denial of a motion to compel arbitration de novo.  See Machado v. System4 LLC, 471 Mass. 204, 208 (2015).  In interpreting arbitration provisions, we "seek a balance between the statutory policy favoring arbitration as an expeditious and efficient means for resolving disputes and the courts' role as the guardian of the parties' right to submit to arbitration only those disputes that the parties intended." Massachusetts Highway Dep't v. Perini Corp., 444 Mass 366, 374 (2005) (Perini Corp.).  Our interpretation of the arbitration provision in question is guided by decisions interpreting the Federal Arbitration Act, and by State contract law pertaining to enforcement of a contract by nonsignatories.

a.  The Federal Arbitration Act.  Under the terms of the arbitration provision in this case, we must apply the Federal Arbitration Act when determining whether a claim is subject to

arbitration.  The Federal Arbitration Act, 9 U.S.C. § 2,[6]

provides:

> "A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

The Federal Arbitration Act has been interpreted to require

courts to "place arbitration agreements on an equal footing with

other contracts."  See AT&T Mobility v. Concepcion, 563 U.S.

333, 339 (2011).  Indeed, the Federal Arbitration Act preempts

any "[S]tate law [that] prohibits outright the arbitration of a

particular type of claim."  See id. at 341.  Where there is a

valid and enforceable arbitration agreement between two parties,

"any doubts concerning the scope of arbitrable issues should be

resolved in favor of arbitration" (emphasis added).  See

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473

U.S. 614, 626 (1985), quoting Moses H. Cone Memorial Hosp. v.

---

[6] The Massachusetts Arbitration Act contains a very similar requirement.  See G. L. c. 251, § 1.  Because the arbitration provision at issue states explicitly that it is to be governed by the Federal Arbitration Act, and because of the similarities between the relevant provisions of the Federal and State arbitration statutes, we need not discuss separately the application of the Massachusetts Arbitration Act to this case.

Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). See also Commonwealth v. Philip Morris Inc., 448 Mass 836, 844 (2007).

In the present case, however, the question is not whether the subject matter of a particular claim falls within the scope of the arbitration provision, but, rather, whether there is an enforceable arbitration agreement between Transworld and Landry. "[B]efore the [Federal Arbitration] Act's heavy hand in favor of arbitration swings into play, the parties themselves must agree to have their disputes arbitrated." Howard v. Ferrellgas Partners, L.P., 748 F.3d 975, 977 (10th Cir. 2014). "[I]t remains a 'fundamental principle' that 'arbitration is a matter of contract,' not something to be foisted on the parties at all costs." See id., quoting Concepcion, 563 U.S. at 339. See also Granite Rock Co. v. International Bhd. of Teamsters, 561 U.S. 287, 302-303 (2010) ("[W]e have never held that this [presumption of arbitrability] overrides the principle that a court may submit to arbitration 'only those disputes . . . that the parties have agreed to submit.' . . . Nor have we held that courts may use policy considerations as a substitute for party agreement" [citation omitted]). Unless the parties "clearly and unmistakably provide otherwise," whether an agreement creates a duty to arbitrate is "undeniably an issue for judicial determination" (citation omitted). See Perini Corp., 444 Mass. at 374. As arbitration is a matter of contract, the

interpretation of an arbitration provision itself "is generally a matter of [S]tate law."  See Stolt-Nielsen S.A. v. AnimalFeeds Corp., 559 U.S. 662, 681 (2010).  See also Arthur Andersen LLP v. Carlisle, 556 U.S. 624, 630-631 (2009) (Federal Arbitration Act does not displace "background principles of [S]tate contract law").

We therefore apply Massachusetts contract law to determine whether Transworld can enforce the arbitration provision in question.  In making this determination, we rely only on generally applicable principles of contract law, rather than on "defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue."  See Epic Sys. Corp. v. Lewis, 138 S. Ct. 1612, 1622 (2018), quoting Concepcion, 563 U.S. at 339.

b.  Enforcement of a contract by a nonsignatory.  The sole issue before us is whether Transworld may enforce the arbitration provision in a contract to which it is not a signatory.  Hence, we look to State law principles of contract law pertaining to such enforcement.

This court has acknowledged six theories under which a nonsignatory may enforce a contract, such as an arbitration agreement, against a signatory:  "(1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; (5) equitable estoppel, and (6) third-party beneficiary"

(footnotes omitted).[7]  See <u>Machado</u>, 471 Mass. at 209-210.  These theories ordinarily are applied to resolve a different question from the question at issue here -- whether a <u>signatory</u> to a contract could enforce the contract against a <u>nonsignatory</u>. Nonetheless, the theories also have been used where a nonsignatory seeks to enforce a contract against a signatory. See <u>id</u>. at 209.

As the United States Supreme Court has emphasized, however, a nonsignatory may rely on such theories only where and to the extent that they are enforceable under a particular State's law of contract.  See <u>Arthur Andersen LLP</u>, 556 U.S. at 631 (nonsignatory can enforce arbitration agreement where "written arbitration provision is made enforceable against [or for the benefit of] a third party under [S]tate contract law").  In <u>Machado</u>, 471 Mass. at 209-210, while acknowledging the existence of these six theories, the only theory we identified as at issue there was the theory of equitable estoppel, which we held to be

---

[7] The United States Supreme Court has recognized the existence of several "traditional principles" of State law by which a nonsignatory may be able to enforce a contract against a signatory, including most of those recognized in <u>Machado</u> v. <u>System4 LLC</u>, 471 Mass. 204, 209-210 (2015), but has explained that a nonsignatory may rely on those principles only to the extent that they are recognized by that State's law of contract. See <u>Arthur Andersen LLP</u> v. <u>Carlisle</u>, 556 U.S. 624, 631 (2009).

enforceable in that case.[8]  See id. ("The theory with clearest application to the facts of this case is equitable estoppel . . .").  That theory is not at issue in Transworld's claims.

c.  Whether Transworld may enforce the arbitration provision.  Transworld contends that two of the theories discussed in Machado apply here.  First, Transworld asserts that it may enforce the arbitration provision in Enterprise's contract with Landry under the "agency" theory.  Second, Transworld argues that it may enforce the arbitration provision as a third-party beneficiary.  We conclude that, on these facts, neither theory is applicable.

i.  Agency theory.  Transworld argues that it is entitled to enforce Enterprise's arbitration provision because it acted as Enterprise's agent for debt collection purposes.  Assuming, without deciding, that Transworld was acting as Enterprise's

---

[8] The United States Supreme Court identified a similar list of possible State law theories, including "assumption, piercing the corporate veil, alter ego, incorporation by reference, third-party beneficiary theories, waiver, and estoppel."  See Arthur Andersen LLP, 556 U.S. at 631.  This list includes a "waiver" theory that has not yet been recognized in Massachusetts, but does not include the theory of "agency," which Massachusetts has recognized.  See Machado, 471 Mass. at 209-210.

agent,[9] we nonetheless conclude that, given the facts at issue,

Transworld cannot rely upon the "agency" theory in its effort to

enforce Enterprise's arbitration provision with Landry.

We do not agree with Transworld's assertion that the agency

theory would permit a nonsignatory agent to enforce an

arbitration provision in a contract signed by its principal

solely by virtue of its status as an agent of the signatory.

"Typically, agents do not obtain rights . . . from contracts

entered into by their principals. . . ."[10]  Constantino v.

Frechette, 73 Mass. App. Ct. 352, 358 (2008).

---

[9] Landry concedes in his brief that Transworld was acting as Enterprise's agent.  We observe, however, that Enterprise's contract with Transworld states that Transworld is an "independent contractor," and expressly prohibits Transworld from describing itself to debtors as an agent of Enterprise.

[10] Numerous courts in other jurisdictions also have held that a nonsignatory agent cannot enforce an arbitration provision signed by its principal solely by virtue of the fact that it is an agent of the principal.  See, e.g., Westmoreland v. Sadoux, 299 F.3d 462, 466 (5th Cir. 2002) ("we agree with the First and Ninth Circuits that a nonsignatory cannot compel arbitration merely because he [or she] is an agent of one of the signatories"); McCarthy v. Azure, 22 F.3d 351, 356-357 (1st Cir. 1994) (declining to allow enforcement by nonsignatory based solely upon agency status); Britton v. Co-op Banking Group, 4 F.3d 742, 747-748 (9th Cir. 1993) (declining to allow nonsignatory agent to enforce arbitration provision where claim did not "relate to or arise out of" contract containing arbitration provision).  But see Pritzker v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 7 F.3d 1110, 1122 (3d Cir. 1993) (nonsignatory agent may enforce arbitration agreement entered into by its principal "[w]here the parties . . . unmistakably intend to arbitrate all controversies which might arise between them").

In Machado, 471 Mass. at 210 n.11, we explained that the agency theory indeed could permit a nonsignatory agent to enforce an arbitration provision in a contract signed by its principal, but only in the limited circumstance where the claim against the agent arose "under the contract in question." In such cases, the nonsignatory would be relying not only upon its status as an agent, but also on the fact that the claim against it arose under the contract containing the arbitration provision. Relatedly, in Bridas S.A.P.I.C v. Government of Turkmenistan, 345 F.3d 347, 356-358 (5th Cir. 2003), cert. denied, 541 U.S. 937 (2004) (cited by Machado, 471 Mass. at 210 n.11), the issue was not whether a nonsignatory agent could enforce an arbitration provision signed by its principal, but whether a nonsignatory principal could be bound by an arbitration provision that an agent had signed on the principal's behalf. Thus, neither this court's description of the agency theory in Machado, supra, nor the example cited in that case as an application of such theory, states that a nonsignatory to an arbitration provision can enforce the provision solely because it is an agent of a signatory.[11]

---

[11] In the same vein, the Appeals Court also has held that a nonsignatory agent seeking to enforce an arbitration provision signed by its principal could do so where there is "language in the agreement that manifests a clear intent to benefit [the nonsignatory agents]." Constantino v. Frechette, 73 Mass. App.

Here, Transworld asserts that, by virtue of its status as an agent of Enterprise, it can enforce the arbitration provision contained in Enterprise's rental contract with Landry. As discussed, generally this would be impermissible under the agency theory. Moreover, the exception to the general rule articulated in Machado -- allowing enforcement by a nonsignatory agent where the claim against the agent arises under the contract containing the arbitration provision -- plainly is inapplicable here. Landry is not claiming that Enterprise committed a breach of its rental contract with him, nor asserting misconduct of any sort by Enterprise. He also does not claim any breach of the rental contract by Transworld. His sole claim is that Transworld engaged in unlawful debt collection practices. Such practices are not mentioned anywhere in Landry's rental contract with Enterprise.

Transworld's reliance upon Grand Wireless, Inc. v. Verizon Wireless, Inc., 748 F.3d 1, 8-11 (1st Cir. 2014), as an example of a case where a nonsignatory agent was permitted to enforce an arbitration provision signed by her employer, is misplaced. In

---

Ct. 352, 358 (2008), citing McCarthy, 22 F.3d at 357. In effect, the "clear intent" requirement means that, to enforce an arbitration provision signed by its principal, a nonsignatory agent must demonstrate that it is an intended third-party beneficiary of the provision. Under this reading, as in Machado, 471 Mass. at 210 n.11, agency status alone is insufficient to allow a nonsignatory to enforce an arbitration agreement.

that case, the plaintiff sued Verizon Wireless, Inc. (Verizon), with which it had an arbitration agreement, and named a Verizon employee as a codefendant. See id. at 3. The court concluded that the employee could enforce the arbitration agreement because the suit alleged misconduct by her undertaken within the scope of her employment, see id. at 11, and because the plaintiff's claims were "relate[d] to the terms of the [contract]" with Verizon, see id. at 8. The court further reasoned that, because the plaintiff's claim was, in effect, an allegation of misconduct by Verizon acting through its employee, allowing the plaintiff to circumvent the arbitration provision by naming an individual employee as a defendant would render the arbitration provision meaningless. See id. at 11.

As discussed supra, Landry has no dispute with Enterprise, and Landry's claims are not related to his rental contract with Enterprise. Moreover, if Transworld had engaged in the untoward debt collection practices alleged, it would not have been acting within the scope of the work Enterprise hired it to perform. The service agreement between Enterprise and Transworld expressly prohibits debt collection by any means that violate applicable Federal and State law.

ii. Third-party beneficiary theory. Transworld argues as well that it may enforce the arbitration provision as a third-party beneficiary. Transworld contends that, because the

arbitration provision "is to be broadly interpreted and applies to . . . all claims Renter may bring against [Enterprise's] employees, agents, affiliates or representatives," the contract must be read to require Landry to arbitrate his claim against Transworld.

Under Massachusetts law, a nonsignatory seeking to enforce an arbitration agreement as a third-party beneficiary must point to "clear[] and definite[]" evidence of the parties' intent that it benefit from the provision. See Constantino, 73 Mass. App. Ct. at 356. See Anderson v. Fox Hill Village Homeowners Corp., 424 Mass. 365, 366-367 (1997). Transworld contends that it is either an "agent" or a "representative" of Enterprise, and that these categorical references provide "clear and definite" evidence of the intent that Transworld could enforce the arbitration provision. We do not discern any such clarity.

For evidence of intent to include Transworld as a third-party beneficiary to be considered "clear and definite," there must, at a minimum, be no ambiguity in the arbitration provision as to whether Transworld could enforce it. "Contractual language is ambiguous 'if it is susceptible of more than one meaning and reasonably intelligent persons would differ as to which meaning is the proper one'" (citation omitted). James B. Nutter & Co. v. Estate of Murphy, 478 Mass. 664, 669 (2018). We look to the arbitration provision in question to determine

whether reasonable minds could differ as to whether the provision is applicable to claims brought against Transworld.

The arbitration provision in question contains competing language regarding the parties who may enforce it. The second sentence of the arbitration provision states that the "Renter and [Enterprise] agree to arbitrate any and all claims . . . against each other" (emphasis supplied). This language suggests that the only claims that are subject to arbitration are those brought by a renter, such as Landry, against Enterprise, or vice versa. As Transworld notes, however, a subsequent sentence in the arbitration provision seemingly contradicts this position by stating that all claims brought against Enterprise's "employees, agents, affiliates or representatives" also are subject to arbitration. A third section of the arbitration provision goes on to state that arbitration may occur "if [Enterprise] and [the] Renter" fail to resolve the dispute within thirty days. This section similarly provides for an allocation of arbitration costs between Enterprise and the renter, with no mention of third parties. Thus, notwithstanding an isolated reference in the arbitration provision to claims against "employees, agents, affiliates or representatives," multiple sections of the arbitration provision suggest that only claims between a renter and Enterprise are subject to arbitration.

In light of these competing provisions, reasonable minds surely could differ as to whether the arbitration provision is applicable to claims brought against Transworld.  Even assuming, without deciding, that Transworld's interpretation of the arbitration provision -- that the categorical reference to "agents" or "representatives" necessarily includes a third-party debt collector -- is reasonable, it is by no means the only reasonable interpretation.[12]

Another reasonable interpretation of these competing provisions might be that the arbitration provision only applies to claims where a renter alleges misconduct by Enterprise.  Such a claim could be brought either against Enterprise itself or, alternatively, against the "employees, agents, affiliates or representatives" who actually carried out the misconduct.  Under this interpretation of the arbitration provision, Landry's claim against Transworld would not be subject to arbitration, since,

---

[12] Transworld's reliance on language in McCarthy, 22 F.3d at 362, and Constantino, 73 Mass. App. Ct. at 357, suggesting that a "categorical reference" (e.g., to "agents" or "representatives") in an arbitration provision might be sufficient to allow any agent or representative to enforce the provision, is unavailing.  In both of those cases, unlike here, the claims were squarely rooted in the transaction that was the subject of the underlying contract, and thus were directly related to a dispute with the signatory.  See McCarthy, supra at 354 n.2 (complaint included claim of breach of contract); Constantino, supra at 353 (claim sought damages for personal injuries and wrongful death of patient in nursing home, where arbitration provision was part of contract executed between patient and nursing home).

as discussed, Landry has not alleged any misconduct by Enterprise. Instead, Landry asserts that Transworld alone engaged in unlawful debt collection practices.

The language in the arbitration provision is susceptible of multiple interpretations; the arbitration provision is, at a minimum, ambiguous as to whether Transworld can enforce it. Transworld accordingly has not put forth the "clear and definite" evidence of intent that it must if it were to be entitled to enforce the arbitration provision as a third-party beneficiary.

In sum, there was no error in the denial of Transworld's motion to compel arbitration.

<u>Order denying motion to compel arbitration affirmed</u>.