Craig SANFORD; Mary Jo Sanford

v.

**BRACEWELL & GUILIANI, LLP, Appellant.**

No. 14–1763.

United States Court of Appeals, Third Circuit.

Argued: June 24, 2015.

Filed: July 2, 2015.

Peter C. Buckley, Esq. [Argued], Eric E. Reed, Esq., Abraham C. Reich, Esq., Philadelphia, PA, Steven M. Schneebaum, Esq., Washington, DC, for Appellant.

Clifford E. Haines, Esq. [Argued], Haines & Associates, Philadelphia, PA, for Appellee.

Before: FISHER, JORDAN, and SHWARTZ, Circuit Judges.

## OPINION *

SHWARTZ, Circuit Judge.

Bracewell & Guiliani, LLP (the "Firm") appeals the District Court's order denying its motion to stay pending arbitration and granting Mary Jo Sanford a trial to determine whether she is bound by the arbitration provision embodied in an agreement with the Firm. Because it is clear from the face of the Complaint that Mary Jo Sanford is required to arbitrate her claims, we will reverse.

I

This case arises out of Craig and Mary Jo Sanford's (the "Sanfords") efforts to recoup $12.5 million that they entrusted to Jamie Smith.[1] When Smith failed to timely return the money, Craig Sanford spoke with an attorney at the Firm who "assured the Sanfords that [the Firm] would be able to assist them in getting a return of their money." App. 63–64. "[T]he Sanfords entered into an attorney-client relationship

---

\* This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

1. As we review this motion under the Rule 12(b)(6) standard, these facts are drawn from the Complaint.

with [the Firm] by way of an engagement agreement [the "Engagement Agreement"] between ... the Firm and Mr. Sanford." App. 64. "The Firm agreed to represent the Sanfords in obtaining a return of their money," and "[i]n exchange for this representation, the Sanfords paid the firm $50,000." *Id.* While the Sanfords allege that the Firm represented both of them, the Engagement Agreement identifies only Craig Sanford as the client and states that the Firm's "representation does not include employers, partners, spouses, siblings, or other family members." App. 82. The Engagement Agreement also contains an arbitration provision, which provides that "any controversy, dispute or claim ... arising out of or relating to the ... engagement of [the Firm], shall be resolved by arbitration." App. 80.

The Sanfords allege that the Firm, "[f]or all intents and purposes," took "no steps to locate or secure [their] money." App. 64. As a result, Craig Sanford spoke with an attorney at the Firm and "it was decided that the representation would be terminated." *Id.*

The Sanfords thereafter filed a two-count verified Complaint that was subsequently removed to federal court, alleging that the Firm engaged in professional malpractice and breached the Engagement Agreement, which was attached to and explicitly referenced therein. The Firm moved to stay proceedings pending arbitration (the "Motion"), arguing that the Sanfords were bound by the terms of the Engagement Agreement, including the arbitration provision, because their Complaint alleged that "the Sanfords" entered into an attorney-client relationship "by

way of" the Engagement Agreement. App. 97 (internal quotation marks omitted). The Firm further argued that the Sanfords' decision to include Mary Jo Sanford as a plaintiff could not defeat their obligation to arbitrate the breach of contract claim because Mary Jo Sanford had identified the written Engagement Agreement as the contract breached and, since that contract contained an arbitration provision, she is "compelled to arbitrate any dispute deriving from [it]" under principles of equitable estoppel. App. 101–102.

In response, the Sanfords argued that the arbitration agreement was void as a matter of public policy. They also opposed the Firm's "suggest[ion] that [Mary Jo Sanford] should not be a party to th[e] lawsuit, or [that] naming her as a party [was] an attempt to circumvent the arbitration clause," arguing that Mary Jo Sanford "was clearly a third[-]party beneficiary" of the Engagement Agreement. Opposition to Mot. to Stay Arbitration at 14 & n. 4, No. 13–cv–1205 (E.D. Pa. Mar. 27, 2013), ECF No. 7.

The District Court conducted hearings on the Motion at which the parties presented evidence of, among other things, whether communications prior to execution of the Engagement Agreement established an attorney-client relationship between Mary Jo Sanford and the Firm.

The District Court granted the Motion with respect to Craig Sanford but denied the Motion with respect to Mary Jo Sanford. It concluded that the arbitration provision did not violate public policy, and, relying on the Complaint, determined that Craig Sanford was bound to arbitrate.[2]

---

2. Mary Jo Sanford has argued in the District Court and at oral argument before this Court that mandatory arbitration clauses in agreements between attorneys and their clients are unconscionable. Mary Jo Sanford concedes,

however, that she has not asked us to resolve this issue as part of this appeal. We note, however, that the District Court thoroughly addressed this argument, observed that the Pennsylvania Supreme Court has not provid-

With respect to Mary Jo Sanford, the District Court observed that she was not a signatory to the Engagement Agreement and that "the Complaint and the supporting documents are unclear regarding [Mary Jo] Sanford's status as a client" and "the effect of the arbitration agreement on her." App. 29. For this reason, the District Court considered the hearing testimony, applied the summary judgment standard, and concluded that a genuine issue of material fact existed as to whether Mary Jo Sanford was a client of the Firm and whether, if she was a client, she was bound by the arbitration provision.

The Firm appeals the District Court's denial of the Motion with respect to Mary Jo Sanford.

## II [3]

The Firm argues that the District Court should have resolved the Motion based upon the pleadings pursuant to Federal Rule of Civil Procedure 12(b)(6) and that, since Mary Jo Sanford seeks to recover for breach of a contract that contains an arbitration provision, equitable estoppel precludes her from avoiding arbitration.

Arbitration is "strictly a matter of contract." *Bel–Ray Co., Inc. v. Chemrite (Pty) Ltd.,* 181 F.3d 435, 444 (3d Cir.1999). "If a party has not agreed to arbitrate, the courts have no authority to mandate that he do so." *Id.* "[I]n deciding whether a party may be compelled to arbitrate under the [Federal Arbitration Act ("FAA")], we first consider (1) whether there is a valid

agreement to arbitrate between the parties and, if so, (2) whether the merits-based dispute in question falls within the scope of that valid agreement." *Flintkote Co. v. Aviva PLC,* 769 F.3d 215, 220 (3d Cir. 2014) (internal quotation marks omitted).

To determine whether there is a valid agreement to arbitrate between Mary Jo Sanford and the Firm, we must initially decide whether the determination is made under Fed.R.Civ.P. 12(b)(6) or 56 and thus, what materials we may consider. Motions to compel arbitration are reviewed under Rule 12(b)(6) "[w]here the affirmative defense of arbitrability of claims is apparent on the face of a complaint (or ... documents relied upon in the complaint)." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.,* 716 F.3d 764, 773–74 (3d Cir.2013) (ellipsis in original and internal quotation marks omitted). If the motion to compel arbitration is not based on a complaint "with the requisite clarity" to establish arbitrability or "the opposing party has come forth with reliable evidence that is more than a naked assertion ... that it did not intend to be bound by the arbitration agreement, even though on the face of the pleadings it appears that it did," resort to discovery and Rule 56 is proper. *Id.* at 774 (ellipsis in original and internal quotation marks omitted).

■ The Complaint reveals that Mary Jo Sanford has sued for breach of the written Engagement Agreement, which includes an arbitration clause. Because "the affirmative defense of arbitrability" was

---

ed guidance to attorneys on this issue, and held that Craig Sanford was properly informed of the scope and effect of the arbitration agreement contained in the Engagement Agreement. The Pennsylvania Supreme Court is vested with the power to determine whether arbitration clauses between attorneys and clients are permitted under Pennsylvania law. Pa. Const. art. V, § 10; *see Common-*

*wealth v. Stern,* 549 Pa. 505, 701 A.2d 568, 570–71 (1997). It has not prohibited such agreements and we see no reason to disturb the District Court's conclusion that they are not improper.

**3.** The District Court had jurisdiction pursuant to 28 U.S.C. § 1332, and we have jurisdiction pursuant to 9 U.S.C. § 16(a)(1)(B).

therefore apparent from the face of the complaint and the documents relied upon therein, *Guidotti*, 716 F.3d at 773–74 (internal quotation marks omitted), the motion should have been reviewed under Rule 12(b)(6), accepting the factual allegations as true and construing the Complaint in the light most favorable to the Sanfords.[4] *Id.* at 772.

■ Applying this standard, we conclude that, although Mary Jo Sanford is not a signatory to the Engagement Agreement, she is nevertheless bound by the arbitration clause under equitable estoppel principles. Under the FAA, arbitration provisions may be enforced against non-signatories under the doctrine of equitable estoppel if "the relevant state contract law recognizes [that principle] as a ground for enforcing contracts against third parties." *Flintkote*, 769 F.3d at 220 (internal quotation marks omitted). This Court has recognized that "Pennsylvania law allow[s] non-signatories to be bound to [ ] arbitration agreement[s]" and that a non-signatory may be bound by an arbitration clause "when the non-signatory knowingly exploits the agreement containing the arbitration clause despite having never signed the agreement." *Griswold v. Coventry First LLC*, 762 F.3d 264, 271–72 (3d Cir. 2014) (quoting *E.I. DuPont de Nemours &*

*Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 199 (3d Cir.2001)); *see also Dodds v. Pulte Home Corp.*, 909 A.2d 348, 351 (Pa.Super.Ct.2006). Such exploitation occurs when a non-signatory embraces a contract by "seeking to enforce terms of that contract or asserting claims based on the contract's other provisions," *Griswold*, 762 F.3d at 272 (internal quotation marks, citations, and brackets omitted), and "then turn[s] its back on the portions of the contract, such as an arbitration clause, that it finds distasteful," *Flintkote*, 769 F.3d at 221 (internal quotation marks omitted).

Here, Mary Jo Sanford has asserted a breach of contract claim and identified the written Engagement Agreement as the contract allegedly breached. Despite having sued to enforce the terms of the Engagement Agreement, she claims that she is not bound by the arbitration provision contained therein. This attempt to "claim the benefit of the contract and simultaneously avoid its burdens" is precisely the situation the doctrine of equitable estoppel seeks to prevent. *E.I. DuPont*, 269 F.3d at 200 (internal quotation marks omitted). Thus, Mary Jo Sanford, having elected to proceed under a claim for breach of the Engagement Agreement, is bound by its terms, including the arbitration provision.[5]

4. Moreover, in her opposition to the Motion, Mary Jo Sanford characterized herself as a third-party beneficiary of the Engagement Agreement and did not include evidence with her opposition showing that she did not intend to be bound by the arbitration provision. For this additional reason, the Motion should have been decided under Rule 12(b)(6). *See Par–Knit Mills, Inc. v. Stockbridge Fabrics Co., Ltd.*, 636 F.2d 51, 55 (3d Cir.1980) (judging a motion to compel arbitration under Rule 56 where plaintiff presented "[a]n unequivocal denial that the agreement had been made, accompanied by supporting affidavits"). The fact that Mary Jo Sanford later testified that she did not agree to arbitrate her claims does not change this conclusion. This evidence

was not presented as part of her submission in opposition to the Motion. Rather, the testimony was adduced at a hearing. Under *Guidotti*, such testimony should not have been allowed as the defense of arbitrability was disclosed from the Complaint and its attachments, and the record should have been limited to those materials.

5. At the hearing and in her subsequent briefing, Mary Jo Sanford attempted to recast her cause of action from breach of a written contract to breach of an implied contract, by introducing evidence of oral exchanges with a member of the Firm that occurred before the Engagement Agreement was signed. Notably, however, she did not seek leave to amend

Principles of equitable estoppel therefore mandate arbitration of her claims, and the District Court thus erred in denying the Firm's motion to stay pending arbitration of her claims.[6]

## III

For the foregoing reasons, we will reverse and remand for proceedings consistent with this Opinion.

---

her Complaint to proceed under a theory of implied contract. Thus, her Complaint still alleges a claim based on the Engagement Agreement and, as such, she is still saddled with its terms.

6. Mary Jo Sanford is also estopped from avoiding the arbitration clause under third-party beneficiary principles. *See Johnson v. Pa. Nat'l Ins. Cos.*, 527 Pa. 504, 594 A.2d 296, 298 (1991); *E.I. DuPont*, 269 F.3d at 195. The Sanfords represented to the District Court that Mary Jo Sanford "was clearly a third[-]party beneficiary" of the Engagement Agreement. Opposition to Mot. to Stay at 14 n. 4, No. 13–1205 (E.D. Pa. Mar. 27, 2013), ECF 7. Thus, her self-characterization as a third-party beneficiary of the contract binds her to its terms.