NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1090
_____

CRAIG SANFORD and MARY JO SANFORD,
Appellants,

v.

BRACEWELL, LLP

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2:13-cv-01205)
District Judge: Honorable Joel H. Slomsky
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
on November 19, 2020

Before: JORDAN, KRAUSE, and RESTREPO, *Circuit Judges*

(Filed: January 11, 2021)
_____

**OPINION**[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

RESTREPO, *Circuit Judge*.

Craig and Mary Jo Sanford hired Bracewell, LLP, a law firm, to recover $12.5 million allegedly stolen from them by a man named Smith. When Bracewell failed to find Smith, the Sanfords hired a new attorney. The new attorney found Smith and won judgments against him. But by then the money was gone.

The Sanfords sued Bracewell for breach of contract and legal malpractice. Based on the parties' engagement letter, the District Court ordered the parties to arbitrate. Eventually, an arbitration panel ruled for the Sanfords on the breach of contract claim but against them on the legal malpractice claim. The District Court confirmed the panel's determination, and the Sanfords timely appealed.

The District Court had jurisdiction pursuant to 28 U.S.C. § 1332 and 9 U.S.C. § 10, and we have jurisdiction pursuant to 28 U.S.C. § 1291 and 9 U.S.C. § 16(a)(1)(D). Our review of the District Court's order compelling arbitration is plenary. *Century Indem. Co. v. Certain Underwriters at Lloyd's*, 584 F.3d 513, 521 (3d Cir. 2009). And our review of the District Court's order confirming the arbitration award is two-fold—we review its findings of fact for clear error and its legal conclusions de novo. *Id.* at 521-22. For the following reasons, we will affirm.

To begin, the District Court correctly ordered the parties to arbitrate their dispute. In their engagement letter, the parties agreed to arbitrate "any controversy, dispute or claim . . . arising out of or relating to the engagement," App. 99a, and the Sanfords concede here "that this dispute would fall within the scope of the arbitration clause," Appellant Br. 29. We see no reason to disregard the will of the parties.

The Sanfords nevertheless insist that the arbitration clause is unconscionable and, therefore, unenforceable. It is not.[1] The procedure by which the parties formed their agreement to arbitrate appears more-or-less ordinary. Both parties were relatively sophisticated. Bracewell did not employ any untoward tactics. The clause appeared prominently in an otherwise uncomplicated agreement. And nothing compelled the Sanfords to stick with Bracewell. Indeed, the engagement letter encouraged the Sanfords to consult other counsel for "independent advice concerning [the arbitration clause.]" App. 99a-100a.

The substance of the arbitration clause appears satisfactory, too. Whether or not the Sanfords preserved this argument, *see* App. 30a n.7, the clause did not unreasonably favor Bracewell or impose onerous terms on the Sanfords. Both parties bore their own costs and fees, and waived certain rights, including the right to a "trial de novo[] in a court of law." App. 99a. While some courts and scholars have questioned whether arbitration clauses in

[1] The parties' engagement letter states that "New York law shall govern the substantive issues relating to the engagement." App. 99a. It is not clear whether New York law governs questions concerning the clause's enforceability. The parties, the District Court, and a previous panel of this Court all have deployed Pennsylvania law to explore whether the clause is or would be unconscionable. *See* Appellant Br. 32; Appellee Br. 27-28; App. 36a n.11; *Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 116 n.2 (3d Cir. 2015). The District Court, sitting in diversity, should have applied Pennsylvania's choice-of-law rules to decide whether the parties' designation of New York law governed questions concerning the clause's validity. *See Gay v. CreditInform*, 511 F.3d 369, 389 (3d Cir. 2007). In any case, the result of a choice-of-law analysis is immaterial. Under both New York law and Pennsylvania law, a contract term is unconscionable if the offeree lacks "meaningful choice" to accept it and if it "unreasonably favors" the offeror. *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119 (Pa. 2007); *King v. Fox*, 851 N.E.2d 1184, 1191 (N.Y. 2006).

client engagement letters should be unenforceable, *see* App. 32a-37a, here no applicable law makes that so.

With the arbitration clause enforceable, the Sanfords next attempt to vacate the panel's award. To do so, they argue that the panel manifestly disregarded the applicable law governing their legal malpractice claim. New York law governed the panel's determinations. *See* App. 99a. Under New York law, to recover damages for legal malpractice, the Sanfords had to prove duty, breach, cause, and harm. *Rudolf v. Shayne, Dachs, Stanisci, Corker & Sauer*, 867 N.E.2d 385, 387 (N.Y. 2007). And to establish causation, they had to show that "but for" Bracewell's alleged breach, they would not have incurred the damages they claimed. *Id.*

No argument advanced by the Sanfords warrants vacating the panel's conclusion that Bracewell's alleged breach did not cause them harm. First, while Bracewell allegedly failed to pursue settlement with Smith, the Sanfords introduced no evidence that Smith had the means to satisfy their demands, or that they would have accepted any achievable settlement had Bracewell negotiated one. In addition, the panel's conclusion that Bracewell's pursuit of injunctive relief may have been futile is reasonable. A court could have declined to issue equitable relief because the Sanfords' hands were unclean—they engaged Smith only to shield their assets from a separate legal judgment. Finally, the arbitration panel did not shoulder the Sanfords with the burden of proving anything beyond the elements of their legal malpractice claim. As claimants, the Sanfords bore the initial burden to prove duty, breach, cause, and harm. If they had, *then* Bracewell could have argued that a resulting judgment would be uncollectable, an argument for which they would bear the burden of

4

proof. Because the Sanfords did not prove their case, Bracewell's downstream obligation to show that proven damages could not have been collected never arose.

For these reasons, we will affirm the District Court.