SUPERIOR COURT 
 
 ADRIENNE E. COHEN, AS PERSONAL REPRESENTATIVE OF THE ESTATE OF BRET A. COHEN v. NELSON MULLINS RILEY & SCARBOROUGH, LLP

 
 Docket:
 2484CV00283-BLS2
 
 
 Dates:
 June 2024
 
 
 Present:
 Kenneth W. Salinger
 
 
 County:
 SUFFOLK
 

 
 Keywords:
 DECISION AND ORDER ALLOWING DEFENDANT’S MOTION TO DISMISS AND COMPEL ARBITRATION
 
 

 Bret A. Cohen was an equity partner at the law firm Nelson Mullins Riley & Scarborough, LLP. Mr. Cohen was diagnosed with having glioblastoma, an aggressive brain cancer, in early 2022; he kept working for another month, and died a year later. Cohen’s spouse, Adrienne Cohen, has sued on behalf of Cohen’s Estate. She claims that Nelson Mullins breached the firm’s Partnership Agreement by not fully compensating Cohen for his work and the revenue he generated during the last fiscal year that he worked at the firm.
The Partnership Agreement includes a provision that requires arbitration of any claim or dispute between a Partner and the Firm that arises out of or relates to the Agreement or to the relationship between the Partner and the Firm. The Court will allow the motion by Nelson Mullins to enforce this provision, compel arbitration, and dismiss this action without prejudice.
Cohen was bound by the arbitration provision even though he apparently never signed the Partnership Agreement. The Estate made a binding admission in its complaint that the Partnership Agreement was a valid and binding contract between Cohen and Nelson Mullins. In addition, Cohen accepted and became a party to the Partnership Agreement by performing under it, this contract could have been performed in less than one year and therefore was not subject to the statute of frauds, and the arbitration provision was not unconscionable when Cohen accepted the contract terms.
The Estate is therefore bound by the arbitration provision, because its claims are entirely derivative of Cohen’s own causes of action against the Firm. In any case, the Estate has brought suit under the Partnership Agreement and therefore is estopped from denying that it is bound by all of its terms, including the arbitration provision.
 
                                                            -1-
 
1. Question for the Court to Answer. The Court must decide whether the arbitration provision in the Partnership Agreement is enforceable against the Estate.1 The argument by Nelson Mullins that this threshold question must be referred to an arbitration panel is without merit.
“Arbitration is a matter of contract and consent,” and the Supreme Court has “long held that disputes are subject to arbitration if, and only if, the parties actually agreed to arbitrate those disputes.” Coinbase, Inc. v. Suski, 144 S.Ct. 1186, 1190 (2024). “[A] party who has not agreed to arbitrate will normally have a right to the court’s decision about the merits of its dispute.” Id. at 1193, quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942 (1995).
“ ’[B]efore referring a dispute to an arbitrator,’ therefore, ‘the court determines whether a valid arbitration agreement exists.’ ” Id., quoting Henry Schein, Inc. v. Archer and White Sales, Inc., 586 U.S. 63, 69 (2019). Nelson Mullins, as the party seeking to compel arbitration, bears the burden of proving “the existence of a binding agreement to arbitrate.” Air-Con, Inc. v. Daikin Applied Latin America, LLC, 21 F.4th 168, 176 (1st Cir. 2021).
The Court, and not any arbitrators, must also decide whether an arbitration agreement binds litigants who are not parties to the contract, because in such cases there is no clear and unmistakable evidence that those litigants intended to delegate questions of arbitrability to an arbitrator. Walker v. Collyer, 85 Mass. App. Ct. 311, 317–318 (2014); accord First Options, 514 U.S. at 941–947.
2. The Court may consider the terms of the Partnership Agreement in deciding Nelson Mullins’ motion to dismiss because the Estate referred to the Partnership Agreement in its complaint, relied upon it in framing that pleading, and acknowledged in its opposition that the document submitted by Nelson Mullins is an authentic copy of the Partnership Agreement.  See Lanier
v. President and Fellows of Harvard College, 490 Mass. 37, 44 (2022) (in deciding motion to dismiss, court may consider documents referenced in complaint); Marram  v.  Kobrick  Offshore Fund,  Ltd.,  442 Mass.  43,  45  n.4 (2004) (same  re
 
-----------------------------------------------
[1] The parties assumed that, because the Court allowed a motion to impound the Partnership Agreement as a whole, any reference in their memoranda to any part of the Partnership Agreement would automatically be impounded and kept out of the public record as well. Not so. The parties did not seek and are not entitled to impoundment of anything they filed other than the complete Partnership Agreement. Nothing in the contract’s arbitration provision or general compensation terms meets the legal standards for impoundment.
 
                                                            -2-
 
document relied upon in framing complaint); City of Miami Fire Fighters’ and Police Officers’ Retirement Trust v. CVS Health Corp., 46 F.4th 22, 26 (1st Cir. 2022) (same re documents whose authenticity is not disputed); Dittmer Properties, L.P. v. F.D.I.C., 708 F.3d 1011, 1021 (8th Cir. 2013) (same re partnership agreement that underlay allegations in complaint and the authenticity of which was not questioned).
At oral argument, the Estate asserted for the first time that the motion to compel arbitration should be denied because Nelson Mullins failed to submit an affidavit authenticating the Partnership Agreement.
The Court considers this argument to have been waived by the Estate’s failure to raise it in its written opposition, especially since it is inconsistent with points that the Estate actually did make in its written memorandum. The Estate expressly conceded in its opposition that Cohen “was provided with a copy of the firm’s Partnership Agreement” and acknowledged that the Exhibit 1 to Nelson Mullins’ memorandum is an authentic copy of that contract. If the Estate had challenged the authenticity of the Partnership Agreement, it presumably would have been a simple matter for Nelson Mullins to respond by submitting an affidavit confirming that the document it provided is an authentic copy of that document.
A party that opposes a motion in the Superior Court must submit a memorandum “that includes a statement of reasons, with supporting authorities, that the motion should not be allowed.” Sup. Ct. Rule 9A(a)(2). This ensures that the opposing party provides sufficient notice of and support for its arguments and that the moving party has the opportunity to respond in writing in a short reply memorandum. One of the purposes of Rule 9A is to prevent motion practice by ambush.
Parties therefore waive issues and arguments that they do not raise and develop in their written memoranda. See Board of Reg. in Med. v. Doe, 457 Mass. 738,  743  n.12  (2010)  (argument  raised  for  first   time  at  oral  argument,   in violation of rule requiring that parties’ contentions must be presented in written brief, is waived). Since the Estate did not challenge and instead acknowledge the authenticity of the Partnership Agreement in its written
 
                                                            -3-
 
opposition, it waived any challenge to the authenticity of the document provided by Nelson Mullins.[2]
3. The Arbitration Agreement Was Enforceable against Cohen. Although there is no evidence that Cohen ever signed Nelson Mullins’ Partnership Agreement, the Estate’s admissions in its complaint establish that Cohen accepted the terms of that contract, became a party to the Partnership Agreement, and therefore was bound by its arbitration provision. The Estate’s arguments that the Partnership Agreement is unenforceable under the Statute of Frauds, and that the arbitration provision is unenforceable because it is substantively and procedurally unconscionable, are without merit.
3.1. Admission that Contract Was Valid and Binding. The Estate expressly admits in its complaint that Cohen was a party to the Partnership Agreement, that the agreement was a valid contract between Cohen and Nelson Mullins, and that its terms were binding upon both Cohen and Nelson Mullins. Paragraph 61 specifically alleges that Cohen and Nelson Mullins both “agreed to abide by the terms of the Partnership Agreement which was a valid and binding contract.” The Estate’s first two claims are for breach of that contract.
The Estate is bound by its admissions that the Partnership Agreement was a binding contract between Cohen and Nelson Mullins. See G.L. c. 231, § 87 (“In any civil action pleadings … shall bind the party marking them.”); Adiletto v. Brockton Cut Sole Corp., 322 Mass. 110, 112 (1947) (this statute provides that “facts admitted in pleadings” are “conclusive upon” the party making them); Maker v. Bermingham, 32 Mass. App. Ct. 971, 973 (1992) (admission as to mixed question of fact and law, in that case about existence of partnership, “will conclude the issue”) (quoting Wasserman v. Tonnelli, 343 Mass. 253, 257 (1961)).
3.2. Acceptance by Performance. Even if the Estate had not expressly conceded that  the  Partnership Agreement  was  a  valid  and  binding  contract between
 
--------------------------------------------
 
[2] For similar reasons, the Court has not considered arguments that the Estate alluded to only in brief footnotes, and deems those arguments to have been waived. An undeveloped assertion buried in a footnote does not satisfy the requirements of Rule 9A(a)(2). Cf. Boston Edison Co. v. Massachusetts Water Res. Auth., 459 Mass. 724, 726 n.3 (2011) (undeveloped argument relegated to footnote is waived); McCullen v. Coakley, 571 F.3d 167, 182 n.3 (1st Cir. 2009), cert. denied, 130 S.Ct. 1881 (2010) (“avoiding waiver requires more than a hint that a particular theory may be lurking; it necessitates some developed argumentation addressed to that particular theory”).
 
                                                            -4-
 
Cohen and Nelson Mullins, other factual allegations in the complaint (which are also binding on the Estate) independently establish that Cohen accepted the terms of the Partnership Agreement.
The Estate alleges that Nelson Mullins agreed to make Cohen an equity partner based in part on “his promise to perform legal services in accordance with Nelson Mullins’s Partnership Agreement,” and that Cohen “was engaged in a contractual relationship” with Nelson Mullins “to perform legal services for Nelson Mullins. The Estate concedes in its complaint that Cohen joined Nelson Mullins as an equity partner in from August 2017 and worked in that capacity for almost five years, until June 1, 2022.
The Estate also alleges that, as an equity partner, Cohen was entitled to receive base income, a bonus, and his share of Nelson Mullins’ “overage allocation,” meaning the excess of actual net income over budgeted net income. This allegation is based directly on the “distribution of earnings” provision in the Partnership Agreement.
In addition, the complaint asserts that Cohen “worked diligently as an Equity Partner at Nelson Mullins,” that he “generated significant revenue for Nelson Mullins,” and that as a result up until the 2021 fiscal year Nelson Mullins paid Cohen substantial compensation in accord with the Partnership Agreement.
Finally, the Estate further alleges that Cohen “fully performed his obligations under the Partnership Agreement during his employment with Nelson Mullins,” and that Nelson Mullins “breached the Partnership Agreement by failing to fully compensate Cohen in accordance with the terms of the Partnership Agreement for the 2021 – 2022 fiscal year,”
Cohen’s continued performance and acceptance of benefits under the Partnership Agreement constituted and demonstrated acceptance of the terms of this contract. See Polaroid Corp. v. Rollins Envt’l Servs. (NJ), Inc., 416 Mass. 684, 691 (1993). By acting as though he was a party to the Partnership Agreement, Cohen confirmed that he had accepted its terms. See Martino v. First Nat. Bank of Boston, 361 Mass. 325, 332 (1972). “There is no surer way to find out what parties meant, than to see what they have done.” Id., quoting Insurance Co. v. Dutcher, 95 U.S. 269, 273 (1877).[3]
 
--------------------------------------------
 
[3] Although the Partnership Agreement provides that it is governed by South Carolina law, the parties rely on Massachusetts law in their memoranda.
<continued…>
 
                                                            -5-
 
3.3. Statute of Frauds. The Estate contends that the Statute of Frauds bars enforcement of the arbitration provision without Cohen’s signature because the Partnership Agreement contains annual performance requirements that could not have been fully performed within one year. The Statute of Frauds provides that no action may be brought to enforce an oral “agreement that is not to be performed within one year from the making thereof” and that is not memorialized in writing. See G.L. c. 259, § 1, cl. Fifth.
This argument fails for two, independent reasons.
First, this clause from the Statute of Frauds does not apply to a contract that could be fully performed within a one-year period, even though performance may have been expected to extend  for  longer.  See  Boothby  v.  Texon,  Inc., 414 Mass. 468, 479 (1993).
For example, an oral contract for indefinite employment is enforceable under the Statute of Frauds because the employment relationship could end in less than a year if the employee died, the employer went out of business, or the employer terminated the arrangement because the employee failed to perform satisfactorily. Id.; accord Meng v. Trustees of Boston Univ. 44 Mass. App. Ct. 650, 652 (1998).
Much the same is true here. Cohen’s obligations under the Partnership Agreement could have come to an end in less than a year, for example if Cohen had unexpectedly died or Nelson Mullins had unexpectedly dissolved during that time. This contract is therefore not barred by the statute of frauds.
Second, as discussed above, the Estate concedes that Cohen performed his obligations under the Partnership Agreement for five years. The statute of frauds “does not apply when there has been, as here, part performance— indeed, continuous part performance—of an agreement.” Brewster Wallcovering Co. v. Blue Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 600 (2007).
--------------------------------------------
 
Neither side suggests that there is any material difference between Massachusetts and South Carolina law with respect to the issues addressed in this decision. The Court may therefore apply Massachusetts law without conducting any choice of law analysis. “Only actual conflicts between the laws of different jurisdictions must be resolved.” UBS Financial Services, Inc. v. Aliberti, 483 Mass. 396, 405 n.12 (2019), quoting Kaufman v. Richmond, 442 Mass. 1010, 1012 (2004) (rescript). “Choice of law analysis is unnecessary when that choice will not affect the outcome of the case.” Kaufman, supra.
 
                                                            -6-
 
3.4. Unconscionability. The Estate’s argument that the arbitration provision is not enforceable because it is unconscionable is also without merit.
“Historically, a contract was considered unconscionable if it was ‘such as no man in his senses and not under delusion would make on the one hand, and no honest and fair man would accept on the other.’ ” Miller v. Cotter, 448 Mass. 671, 679 (2007), quoting Hume v. United States, 132 U.S. 406, 411 (1889), quoting in turn Earl of Chesterfield v. Janssen, 38 Eng. Rep. 82, 100 (Ch. 1750). “Later, a contract was determined unenforceable because unconscionable when ‘the sum total of its provisions drives too hard a bargain for a court of conscience to assist.’ ” Id., quoting Waters v. MIN Ltd., 412 Mass. 64, 66 (1992), quoting in turn Covich v. Chambers, 8 Mass. App. Ct. 740, 750 n.13 (1979).
There was nothing crazy about Cohen implicitly accepting an agreement to arbitrate any claims against Nelson Mullins. Nor are the terms of the arbitration provision so one-sided as to constitute an unenforceably unfair bargain.
“To prove that the terms of a contract are unconscionable, a plaintiff must show both substantive unconscionability (that the terms are oppressive to one party) and procedural unconscionability (that the circumstances surrounding the formation of the contract show that the aggrieved party had no meaningful choice and was subject to unfair surprise).” Bourisquot v. United Healthcare Services of Delaware, Inc., 98 Mass. App. Ct. 624, 630 (2020), quoting Machado v. System4 LLC, 471 Mss. 204, 218 (2015). The Estate cannot satisfy either prong of this test.
3.4.1. No Substantive Unconscionability. This arbitration agreement was not substantively unconscionable, as it applied equally to both sides and preserved for the arbitrator all rights and remedies that would be available under the Partnership Agreement if the same claims were asserted in court. See Miller, 448 Mass. at 680. “The purpose and effect of the agreement are not unconscionable and are entirely consistent with State and Federal policies that heavily favor submitting disputes to binding arbitration.” Rivera v. Stetson, 103 Mass. App. Ct. 187, 192 (2023) (internal quotation marks omitted).
The Estate’s argument that the Court should determine whether the arbitration agreements are substantively unconscionable as applied to the Estate today, and not based on conditions when Cohen accepted the terms of the Partnership Agreement, is without merit. “[S]ubstantive unconscionability ‘examines the relative fairness of the obligations assumed at the time the contract was
 
                                                            -7-
made,’ ” not at some later time when the contract has bite. Lourenco v. Russell Cellular, Inc., 2022 WL 13671467, at *3 (Mass. App. Ct. Oct. 24, 2022) (unpublished Rule 23.0 decision), quoting Manfredi v. Blue Cross and Blue Shield of Kansas City, 340 S.W.3d 126, 133–134 (Mo. Ct. App. 2011); accord  Miller,  448 Mass. at 679–680 (test for unconscionability is “whether, at the time of the execution of the agreement, the contract provision could result in unfair surprise and was oppressive to the allegedly disadvantaged party); see also NPS, LLC v. Minihane, 451 Mass. 417, 420–421 (2008) (in deciding whether liquidated damages provision was unconscionably excessive, court must “look to the circumstances at the time of contract formation”).
The arbitration agreement did not compel Cohen, and does not now compel his surviving spouse, to travel to South Carolina or North Carolina to arbitrate their claims. The Partnership Agreement provides that the arbitration may be held in those locations or may be held remotely.
There was nothing unconscionable about requiring an arbitrable dispute to be heard by a panel of three arbitrators, and further requiring that one of the arbitrators be a current or retired equity partner at a large law firm. As Nelson Mullins correctly notes, there is no reason to expect that such an arbitrator would automatically favor Nelson Mullins or disfavor claims on behalf of the estate of its deceased equity partner.
The further provision that the arbitrators may not order depositions or interrogatory discovery unless the parties agree does not make the agreement unconscionable either. The arbitrators are implicitly given the power to order other document production or compel the parties to respond to requests for admissions. These discovery limitations are “part and parcel of arbitration’s ability to offer ‘simplicity, informality, and expedition.’ ” Caley v. Gulfstream Aerospace Corp., 428 F.3d 1359, 1378 (11th Cir. 2005), quoting Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 31 (1991).
3.4.2. No Procedural Unconscionability. Nor were the procedures by which Cohen accepted the arbitration provision procedurally unconscionable.
The Court finds that the Partnership Agreement was a contract of adhesion, meaning that it was “‘drafted unilaterally” by Nelson Mullins “and then presented on a ‘take-it-or-leave-it’ basis” to Cohen who had “no real opportunity to bargain about its terms.’ ” Empire Loan of Stoughton, Inc. v.
 
                                                            -8-
 
Stanley Convergent Sec. Solutions, Inc., 94 Mass. App. Ct. 709, 715 (2019), quoting Restatement (Second) of Conflict of Laws § 187, comment b (1971).
But the fact that the arbitration provision was part of an adhesion contract does not mean that it was procedurally unconscionable and “is insufficient to render an arbitration agreement invalid.” McInnes, 466 Mass. at 266.
The Estate’s further assertion that the arbitration provision was “camouflaged deep within the 47-page Partnership Agreement,” and that therefore Cohen could not have realized it was there, is baseless. The Partnership Agreement has a table of contents. The arbitration provision is in a separately numbered section titled “Dispute Resolution.” And that provision clearly and plainly spells out the parties’ obligation to arbitrate any disputes.
In its complaint, the Estate concedes that Cohen “was a sophisticated attorney,” an “adept attorney,” and a “top performing litigator” who had been practicing law for 20 years when he joined Nelson Mullins. The arbitration provision was not hidden from him.
4. The Arbitration Agreement Is Enforceable against the Estate. Since the arbitration provision in the Partnership Agreement bound Cohen, it also binds his Estate. The Estate’s claims are entirely derivative of Cohen’s own causes of action against the Firm. In addition, the Estate has brought suit under the Partnership Agreement and therefore is estopped from denying that it is bound by all of its terms, including the arbitration provision.
The Court will dismiss this action without prejudice, rather than stay the proceedings, because all of the Estate’s claims are subject to Cohen’s mandatory arbitration agreement and none of them must be resolved in court. See Bercovitch v. Baldwin Sch., Inc., 133 F.3d 141, 156 n.21 (1st Cir. 1998); accord, e.g., Miller v. Cotter, 448 Mass. 671, 686 (2007) (reversing order denying motion to compel arbitration, and ordering entry of judgment dismissing complaint and order compelling arbitration).
4.1. The Estate’s Claims Are Derivative. The Estate is seeking to recover compensation that it contends Nelson Mullins owed to Cohen during his lifetime. As the personal representative of Cohen’s estate, Adrienne Cohen “has the same standing to sue and be sued” that Cohen had “immediately prior to death.” G.L. c. 190B, § 3-703(c). In other words, the Estate stands in Cohen’s shoes when asserting claims that had accrued during Cohen’s lifetime.
 
                                                            -9-
 
Since the Estate’s claims “are derivative of the decedent's own cause of action,” and the Partnership Agreement’s arbitration provision was enforceable against Cohen, this arbitration agreement binds the Estate. See GGNSC Admin. Servs., LLC v. Schrader, 484 Mass. 181, 192 (2020).
“[A]n executor” or other personal administrator of an estate “is bound by the same contracts that bound the decedent while she was alive, including an arbitration agreement.” Entrekin v. Internal Med. Associates of  Dothan,  P.A., 689 F.3d 1248, 1254 (11th Cir.2012). In a case like this, where “[t]he estate and heirs stand in the shoes of the decedent for purposes of whether the defendant is liable,” the estate is “bound by the decedent’s agreement to arbitrate.” Laizure v. Avante at Leesburg, Inc., 109 So.3d 752, 762 (Fla. 2013); accord, e.g., THI of New Mexico at Hobbs Center, LLC v. Spradlin, 532 Fed.Appx. 813, 817–818 (10th Cir. 2013) (applying New Mexico law); In re Labatt Food Service, L.P., 279 S.W.3d 640, 645–646 (Texas 2009); Briarcliff Nursing Home, Inc. v. Turcotte, 894 S0.2d 661, 664– 665 (Ala. 2004).
4.2. Estoppel by Asserting Contract Claim. In any case, the Estate is estopped from denying that it is bound by the arbitration provision in the Partnership Agreement because it has brought suit directly and indirectly under that contract. Counts I and II of the complaint assert claims for breach of the Partnership Agreement. Count III of the complaint is a claim that Nelson Mullins also breached the Massachusetts Wage Act, G.L. c. 149, § 148, by failing to pay commissions that Cohen was contractually entitled to receive under the Partnership Agreement. Where an employer makes a contractually binding promise to pay someone compensation for their labor or services, the promised compensation constitutes a “wage” within the meaning of the Wage Act. See Parker v. EnerNOC, Inc., 484 Mass. 128, 135 n.11 (2020).
An individual or legal entity that did not sign or become a party to a mandatory arbitration agreement may nonetheless be bound by it on various grounds, including equitable estoppel. Walker, 85 Mass. App. Ct. at 319. For example, a nonsignatory may be estopped from denying it is obligated to arbitrate where it knowingly exploits a contract with an arbitration clause either (I) by seeking to enforce, or asserting claims under, the contract’s other provisions, or (ii) by seeking and obtaining direct benefits from that contract. See, e.g., Ribadeneira v. New Balance Athletics, Inc., 65 F.4th 1, 21–22 (1st Cir. 2023); Griswold v. Coventry First LLC, 762 F.3d 264, 272 (3d Cir. 2014); Noble Drilling Services, Inc. v. Certex
 
                                                            -10-
 
USA, Inc., 620 F.3d 469, 473 (5th Cir. 2010); Reid v. Doe Run Res. Corp., 701 F.3d 840, 846 (8th Cir. 2012).
Massachusetts appellate courts agree that both forms of estoppel may be asserted, in appropriate circumstances, against nonsignatories. See Licata v. GGNSC Malden Dexter LLC, 466 Mass. 793, 804 (2014) (nonsignatory that files suit for breach of contract with arbitration clause may be estopped); Walker, 85 Mass. App. Ct. at 319 (“ ‘direct benefits estoppel’ … allows a signatory to compel to arbitration a nonsignatory party receiving a direct benefit from an arbitration agreement”); see also Machado v. System4 LLC, 471 Mass. 204, 211– 213 (2015) (signatory asserting claims that arise out of and directly relate to contract with arbitration clause is bound to arbitrate with nonsignatory on estoppel grounds).
Where, as here, a nonsignatory sues under a contract that contains a mandatory arbitration clause, principles of equitable estoppel compel the nonsignatory to arbitrate its claims. See, e.g., Ribadeneira, 65 F.4th at 26–27 (1st Cir.); Sanford v. Bracewell & Guiliani, LLP, 618 F. App'x 114, 117–119 (3d Cir. 2015); International Paper Co. v. Schwabedissen Maschinen & Anlagen GMBH,  206  F.3d  411,  418 (4th Cir. 2000); Graves v. BP America, Inc., 568 F.3d 221, 223–224 (5th Cir. 2009) (applying federal common law of contracts).[4]
ORDER
Defendant’s motion to dismiss and compel arbitration is allowed. Final judgment shall enter dismissing this action without prejudice.
/s/Kenneth W. Salinger
Justice of the Superior Court
June 2024
 
--------------------------------------------
 
[4] In Licata, the administrator of the estate of a deceased nursing home resident brought suit to enforce a contract to provide services to the resident. The Supreme Judicial Court held that the administrator was not bound by an entirely “separate agreement to arbitrate” that was not part of the contract that the administrator sought to enforce. See 466 Mass. at 804. Here, in contrast, the arbitration provision is part of the Partnership Agreement that the Estate has brought suit to enforce.